[Cite as *State v. Harris*, 2026-Ohio-2492.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio, | : | |
| Plaintiff-Appellee, | : | No. 24AP-457 |
| | | (C.P.C. No. 23CR-1423) |
| v. | : | |
| | | (REGULAR CALENDAR) |
| Imani M. Harris, | : | |
| Defendant-Appellant. | : | |

D E C I S I O N

Rendered on June 30, 2026

**On brief:** *Shayla D. Favor*, Prosecuting Attorney, and *Mark R. Wilson*, for appellee. **Argued:** *Mark R. Wilson*.

**On brief:** *The Law Office of Thomas F. Hayes, LLC*, and *Thomas F. Hayes*, for appellant. **Argued:** *Thomas F. Hayes*.

APPEAL from the Franklin County Court of Common Pleas

EDELSTEIN, J.

{¶ 1} Following a jury trial, defendant-appellant, Imani M. Harris, was found guilty of vehicular homicide. On appeal, Ms. Harris argues her conviction is against the manifest weight of the evidence. For the following reasons, we affirm.

I. FACTS AND PROCEDURAL BACKGROUND

{¶ 2} On October 8, 2022, Ms. Harris was involved in a single-vehicle accident on Refugee Road in Franklin County, Ohio. Plaintiff-appellee, the State of Ohio, alleged Ms. Harris negligently struck a pedestrian, Gene Gullett, in a pedestrian crosswalk while he was attempting to cross Refugee Road at the Tennyson Boulevard intersection from a bus stop located at the entrance of The Life at Edgewater Landing apartment complex ("Edgewater

Apartments"). In March 2023, a Franklin County Grand Jury indicted Ms. Harris with two counts of vehicular homicide, in violation of R.C. 2903.06(A)(3).

{¶ 3} A violation of R.C. 2903.06(A)(3) is generally a first-degree misdemeanor offense, as was charged in Count 2 of the indictment. However, R.C. 2903.06(C) further provides that, if at the time of the offense, the defendant did not have a valid driver's license and was not eligible for license renewal without examination under R.C. 4507.10, vehicular homicide is a fourth-degree felony offense. Because the state alleged Ms. Harris was driving without a valid driver's license at the time of the offense, Count 1 of the indictment charged her with vehicular homicide as a fourth-degree felony. Ms. Harris pled not guilty to both charges and the matter proceeded to a jury trial.

{¶ 4} Evidence presented at the April 2024 trial established that Ms. Harris was driving a white SUV westbound on Refugee Road in the right lane when a vehicle in front of her, driven by Tiffany Startup, slowed down. Ms. Harris moved into the left westbound lane of Refugee Road to pass Ms. Startup's vehicle. Ms. Harris drove through a red traffic light at the Tennyson Boulevard intersection and fatally struck Mr. Gullett in the pedestrian crosswalk. In addition to Ms. Harris, Ms. Startup and another eyewitness (Andre Scott), stopped, called 9-1-1, and spoke to first responders at the scene.

{¶ 5} Ms. Harris stipulated to driving the white SUV that struck Mr. Gullett and that the impact of the collision resulted in his death. (*See* Apr. 24, 2024 Continued Tr. at 9.) Ms. Harris also stipulated that on the date of the incident, she did not have a valid driver's license and was not eligible for renewal of her driver's license without examination under R.C. 4507.10. (Apr. 24, 2024 Continued Tr. at 10.) Ms. Harris did not testify at trial, as was her right. The defense presented one witness in its case-in-chief, Matthew McGaughey, a traffic signal operations engineer for the City of Columbus, Department of Public Service, Division of Traffic Management.

{¶ 6} Following the presentation of evidence, the jury found Ms. Harris guilty of vehicular homicide, in violation of R.C. 2903.06(A)(3). The jury further found that, at the time of the offense, Ms. Harris was driving her vehicle without a valid driver's license and was not eligible for renewal of her driver's license without examination, thus ratcheting the vehicular homicide offense to a fourth-degree felony.

{¶ 7} At the June 25, 2024 sentencing hearing, the trial court sentenced Ms. Harris to a six-month prison term and ordered that her driver's license be revoked for a period of

60 months, beginning on June 25, 2024. Ms. Harris's conviction and sentence were memorialized in the court's June 26, 2024 judgment entry, later corrected on September 9, 2024 by an amended judgment entry.

{¶ 8} Ms. Harris now appeals from that judgment and raises the following sole assignment of error for our review:

> THE VERDICT IS CONTRARY TO THE MANIFEST WEIGHT OF THE EVIDENCE.

## II. ANALYSIS

{¶ 9} In her sole assignment of error, Ms. Harris contends her conviction for vehicular homicide, a felony of the fourth degree, is against the manifest weight of the evidence. For the following reasons, we disagree.

### A. Legal Standard and Standard of Review

{¶ 10} A manifest weight challenge attacks the credibility of the evidence presented and questions whether the state met its burden of persuasion. *See*, *e.g.*, *State v. Richey*, 2018-Ohio-3498, ¶ 50 (10th Dist.), citing *Eastley v. Volkman*, 2012-Ohio-2179, ¶ 11-13, citing *State v. Thompkins*, 78 Ohio St.3d 380, 386-87 (1997). " '[W]eight of the evidence concerns the inclination of the greater amount of credible evidence offered to support one side of the issue rather than the other.' " *State v. Petty*, 2017-Ohio-1062, ¶ 60 (10th Dist.), quoting *State v. Boone*, 2015-Ohio-2648, ¶ 49 (10th Dist.), citing *Thompkins* at 387.

{¶ 11} When considering an appellant's claim that a conviction is against the manifest weight of the evidence, this court sits as a "thirteenth juror" and may disagree "with the factfinder's resolution of the conflicting testimony." *Thompkins* at 387, citing *Tibbs v. Florida*, 457 U.S. 31, 42 (1982). *See also State v. Martin*, 2022-Ohio-4175, ¶ 26. In making this determination, we must examine the entire record, weigh the evidence and all reasonable inferences, consider the witnesses' credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *See*, *e.g.*, *Sparre v. Ohio Dept. of Transp.*, 2013-Ohio-4153, ¶ 10 (10th Dist.); *Eastley* at ¶ 20; *Thompkins* at 387; *Martin* at ¶ 26.

{¶ 12} Although we review credibility when considering the manifest weight of the evidence, we are cognizant that determinations regarding credibility of witnesses and the weight of testimony are primarily for the trier of fact. *See*, *e.g.*, *State v. DeHass*, 10 Ohio

St.2d 230 (1967), paragraph one of the syllabus; *Morris v. Ohio Dept. of Rehab. & Corr.*, 2021-Ohio-3803, ¶ 64 (10th Dist.), citing *Watson v. Ohio Dept. of Rehab. & Corr.*, 2012-Ohio-1017, ¶ 31 (10th Dist.), citing *Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80 (1984). The trier of fact is best able "to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." *Seasons Coal Co., Inc.* at 80.

{¶ 13} To reverse a jury verdict as being against the manifest weight of the evidence, a unanimous concurrence of all three judges on the court of appeals panel reviewing the case is required pursuant to Article IV, Section 3(B)(3) of the Ohio Constitution. *Bryan-Wollman v. Domonko*, 2007-Ohio-4918, ¶ 2-4, citing *Thompkins* at paragraph four of the syllabus.

### B. Legal Analysis

{¶ 14} In order to convict Ms. Harris of vehicular homicide as a felony of the fourth degree, the state had to prove she negligently caused the death of Mr. Gullett while operating a motor vehicle without a valid driver's license. R.C. 2903.06(A)(3)(a), (C). Because Ms. Harris stipulated to driving the vehicle that caused the death of Mr. Gullett without a valid driver's license, the sole issue before the jury was whether Ms. Harris was negligent in causing his death.

{¶ 15} As distinguished from tort law defining negligence as the failure to exercise ordinary care, for purposes of the culpable mental state for criminal conduct, "negligence" is defined as follows:

> A person acts negligently when, **because of a substantial lapse from due care**, the person fails to perceive or avoid a risk that the person's conduct may cause a certain result or may be of a certain nature. A person is negligent with respect to circumstances when, because of a substantial lapse from due care, the person fails to perceive or avoid a risk that such circumstances may exist.

(Emphasis added.) R.C. 2901.22(D). Thus, the question presented by Ms. Harris's sole assignment of error is whether the jury's finding that Ms. Harris's conduct constituted a **substantial** lapse from due care was against the manifest weight of the evidence. For the reasons that follow, we cannot say the jury clearly lost its way and created a manifest miscarriage of justice in crediting the state's evidence and finding Ms. Harris guilty of vehicular homicide. *See, e.g., DeHass*, 10 Ohio St.2d 230 at paragraph one of the syllabus;

*Morris*, 2021-Ohio-3803, at ¶ 64 (10th Dist.), citing *Watson*, 2012-Ohio-1017, at ¶ 31 (10th Dist.), citing *Seasons Coal Co., Inc.*, 10 Ohio St.3d at 80.

{¶ 16}   As to the issue of whether Ms. Harris's conduct constituted a ***substantial*** lapse from due care, the state contended Ms. Harris was negligent in three respects: running a red light, speeding, and driving a vehicle she knew had bad brakes.

{¶ 17}   Video footage of the incident and eyewitness testimony from Mr. Scott established the traffic light controlling westbound traffic on Refugee Road was red at the time Ms. Harris drove through the Tennyson Boulevard intersection and struck Mr. Gullett in the pedestrian crosswalk.  (*See* Apr. 24, 2024 Tr. Vol. III at 195, 206-10; State's Ex. 1-A.) The state also presented testimony from Isabel Haley, the leasing manager of Edgewater Apartments, and Sergeant Christopher Hostettler of the Columbus Police Department about video footage from the apartment's surveillance cameras that captured the October 8, 2022 crash.  Presented as State's Exhibits 1-A and 1-B,[1] Sergeant Hostettler's body-worn camera footage from his October 18, 2022 interview with Ms. Haley captured the apartment complex's surveillance footage of the October 8, 2022 incident.  Ms. Haley and Sergeant Hostettler testified about viewing the footage and observing that when Mr. Gullett "takes the first couple of steps into the roadway, the crosswalk is a red sign" but "[a]s he stepped in the road it change[s] from don't walk to walk," meaning the light controlling westbound traffic on Refugee Road was red.  (Tr. Vol. III at 208-11.  *See also* Tr. Vol. III at 233-39.) Mr. Gullett was "struck almost immediately, within a second" of the traffic signal controlling pedestrian traffic crossing over the westbound lane of Refugee Road changing to walk.  (Tr. Vol. III at 210-11, 236-39.)  Notably, Ms. Harris, herself, told the 9-1-1 operator she struck Mr. Gullett with her vehicle when she was "running the light."  (State's Ex. 11, 8:16:09 a.m. 9-1-1 Call at 0:44-0:46.)  However, Ms. Harris told the responding officers

---

[1] Ms. Haley explained that the apartment complex's video surveillance footage is retained by their system for 30 days before it is "erase[d] from the cloud completely and there's no way to retrieve it." (Tr. Vol. III at 230-31.) According to Ms. Haley, she informed officers of the retention policy, told them the apartment complex will not have the means to retain these videos because of the file size, and encouraged the officers to come back to collect the video footage before the 30-day period expired. (Tr. Vol. III at 213-14, 231-32.) However, the Columbus Police Department did not timely return to collect the video footage and it was permanently deleted from the cloud as scheduled. (Tr. Vol. III at 213-16, 231-33.) Thus, at trial, the state presented the October 8, 2022 surveillance footage as it was captured on Sergeant Hostettler's body-worn camera when he watched it with Ms. Haley in the apartment's leasing office on October 18, 2022. (Tr. Vol. III at 204-14, 232-39.) Although the trial court overruled the defense's objection to Ms. Haley's testimony about the recording (*see, e.g.*, Tr. Vol. II at 189, 227, 235), the propriety of that ruling has not been challenged on appeal. Thus, we must presume the evidence was properly admitted.

that the traffic light was green (State's Ex. 10 at 1:48-1:52) and, at trial, Ms. Startup testified the light controlling westbound traffic on Refugee Road was green when Mr. Gullett was struck by Ms. Harris's vehicle. (Apr. 23, 2024 Tr. Vol. II at 169-70.)

{¶ 18} Mr. Scott also testified that Ms. Harris's vehicle was traveling faster than the posted 45 mph speed limit when Ms. Harris's car struck Mr. Gullett. (Tr. Vol. III at 198. *See also* Tr. Vol. II at 146, 165-166.) In her 9-1-1 call, Ms. Startup indicated Ms. Harris "flew around [her], going like 55 [mph]" before "smacking right into this guy." (State's Ex. 11, 8:16:13 a.m. 9-1-1 Call at 1:08-1:18.) At trial, Ms. Startup described seeing Ms. Harris's vehicle "c[o]me up real fast," "at least 50 miles per hour, if not faster" from behind her before hitting Mr. Gullett. (Tr. Vol. II at 165-66.) Most notably, Ms. Harris admitted to officers at the scene that she was traveling 50 mph at the time of the incident (State's Ex. 10 at 2:29-2:35) and that she knew the brakes on her vehicle "were bad" (State's Ex. 10 at 2:11-2:27). From his review of the apartment complex's surveillance footage of the incident, Sergeant Hostettler described Ms. Harris's vehicle as blowing through the intersection "at full speed" without any attempt at braking or swerving before it struck Mr. Gullett. (Tr. Vol. II at 209-10.)

{¶ 19} We acknowledge Ms. Harris provided a different account of events in her unsworn statement to officers at the scene. In addition to telling the responding officers that the traffic light was green when she struck Mr. Gullett, Ms. Harris alleged she "noticed [Mr. Gullett] trying to cross the street," and claimed that "the first time he hesitated" but then "decide[d] to ***run***" out in front of her vehicle. (Emphasis added.) (State's Ex. 10 at 1:48-2:05.) Ms. Harris also claimed she "honk[ed] her horn" and believed Mr. Gullett "notice[d] her because he lift[ed] his hand up" but he did "not do anything." (State's Ex. 10 at 2:05-2:11.) Ms. Harris told the responding officer she "tried to swerve to get out of his way" but "as he's running" across Refugee Road they "end up colliding." (State's Ex. 10 at 2:11-2:19. *See also* State's Ex. 10 at 2:37-2:50.) She also claimed a car in the lane beside her prevented her from swerving to avoid Mr. Gullett in the roadway. (State's Ex. 10 at 2:37-2:50.)

{¶ 20} It is well-established that the finder of fact "may consider conflicting testimony from a witness in determining credibility and the persuasiveness of the account by either discounting or otherwise resolving the discrepancies." *State v. Harris*, 2023-Ohio-3994, ¶ 41 (10th Dist.), citing *State v. Taylor*, 2015-Ohio-2490, ¶ 34 (10th Dist.),

citing *Midstate Educators Credit Union, Inc. v. Werner*, 2008-Ohio-641, ¶ 28 (10th Dist.).
" 'The finder of fact can accept all, part or none of the testimony offered by a witness, whether it is expert opinion or eyewitness fact, and whether it is merely evidential or tends to prove the ultimate fact.' " *Petty*, 2017-Ohio-1062, at ¶ 63 (10th Dist.), quoting *State v. Mullins*, 2016-Ohio-8347, ¶ 39 (10th Dist.). *See also State v. Mann*, 2011-Ohio-5286, ¶ 37 (10th Dist.), quoting *State v. Nivens*, 1996 Ohio App. LEXIS 2245, *7 (10th Dist. May 28, 1996) (" 'While [a factfinder] may take note of the inconsistencies and resolve or discount them accordingly, * * * such inconsistencies do not render defendant's conviction against the manifest weight or sufficiency of the evidence.' "). Thus, " 'where a factual issue depends solely upon a determination of which witnesses to believe, that is the credibility of witnesses, a reviewing court will not, except upon extremely extraordinary circumstances, reverse a factual finding . . . as being against the manifest weight of the evidence.' " *In re L.J.*, 2012-Ohio-1414, ¶ 21 (10th Dist.), quoting *In re Johnson*, 2005-Ohio-4389, ¶ 26 (10th Dist.). A defendant "is not entitled to a reversal on manifest weight grounds merely because inconsistent evidence was presented." *State v. Rankin*, 2011-Ohio-5131, ¶ 29 (10th Dist.). *See also State v. J.E.C.*, 2013-Ohio-1909, ¶ 42 (10th Dist.).

{¶ 21} In this case, the jury, as the trier of fact, was in the best position to consider the discrepancies in the testimony regarding the events of the fatal single-car incident. The jury was also in the best position to evaluate the credibility of the live testimony from the eyewitnesses and responding officers in contrast with unsworn statements Ms. Harris made at the scene and a video recording of the incident. Moreover, on review, we find Ms. Harris's unsworn account of her attempts to avoid crashing into Mr. Gullett is belied by the video recording of the incident. Ms. Harris claimed Mr. Gullett ran out onto the roadway, but the video recording depicts him slowly entering and walking in the pedestrian crosswalk. Nor does the video recording show Mr. Gullett put up his hand, as Ms. Harris alleged. Ms. Harris also told the responding officers she braked and swerved to attempt to avoid striking Mr. Gullett as he was "running" into the path of her vehicle; however, the video recording shows Ms. Harris's vehicle strike Mr. Gullett straight-on while traveling at a considerable rate of speed. And, contrary to Ms. Harris's contention otherwise, there was not a vehicle in the right-hand lane beside her that would have prevented her from swerving into that lane. From the evidence presented at trial, the jury could reasonably conclude Ms. Harris negligently caused Mr. Gullett's death by running a red light, driving too fast through

an intersection with a pedestrian in the crosswalk, and/or driving a vehicle that she knew had bad brakes.

{¶ 22} For these reasons, and based on our review of the record before us, we decline Ms. Harris's invitation to substitute our judgment for that of the jury, as the finder of fact, concerning the credibility of the state's witnesses or the weight to be afforded their testimony. The jury was in the best position to consider any discrepancies in the evidence and testimony regarding the events that took place on October 8, 2022. The jury was also in the best position to evaluate the credibility of the live testimony from the eyewitnesses and responding officers in contrast with the unsworn audio-recorded statements Ms. Harris made in the 9-1-1 call and to officers at the scene. After reviewing the record, and for the reasons set forth above, we cannot say this is one of the rare cases where the trier of fact clearly lost its way in weighing the evidence and finding Ms. Harris's operation of her vehicle constituted a substantial lapse from due care when she fatally struck Mr. Gullett in the pedestrian crosswalk.

{¶ 23} Because Ms. Harris has not demonstrated a manifest miscarriage of justice warranting appellate intervention, her contention that her conviction for vehicular homicide is against the manifest weight of the evidence is not well-taken. Accordingly, we overrule Ms. Harris's sole assignment of error.

## III. CONCLUSION

{¶ 24} Having overruled Ms. Harris's sole assignment of error, we affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

LELAND and DINGUS, JJ., concur.

———————————————